## SMITH v. SO. RY. CO. *ET AL.*

### (113 S. E., 465).

1. CARRIERS—EVIDENCE AS TO WEIGHT AND MARKET VALUE OF COWS DYING IN TRANSIT HELD INSUFFICIENT.—In an action for the death of several cows while in transit, evidence as to the weight and market value of the cows *held* insufficient to go to the jury.

2. EVIDENCE—INFORMATION WITHHELD IS PRESUMED TO BE DETRIMENTAL TO PARTY HAVING POWER TO PRODUCE.—Information as to the weight and market value of cattle which died in transit was necessarily in the power of plaintiff shipper to furnish, and where it was withheld it will be presumed to have been detrimental.

3. CARRIERS—WHETHER LOSS OF COWS WAS DUE TO DIPPING PROCESS BEFORE BEING LOADED HELD FOR THE JURY.—In an action for the death of several cows while in transit, whether the loss of the cows was due to the cows being dipped in a solution of arsenic before being loaded in the cars *held* for the jury.

4. CARRIERS—LIABILITY OF CONNECTING CARRIER HELD FOR THE JURY.— While the usual presumption does not apply to an intermediate carrier, and also, when goods are received by a carrier in an acknowledged damaged condition, the presumption does not attach, yet where the cattle died while in the custody of a connecting carrier, there was a presumption of injury while in the custody of the carrier, sufficient to put that line to an explanation of the circumstances, and require the submission of the issue to the jury.

Before WHALEY, J., County Court, Richland.   Reversed and remanded.

Action by W. C. Smith against Southern Railway Co. and Seaboard Air Line Railway Co.   Judgment for plaintiff and defendants appeal.

*Mr. Alfred Wallace, Jr.,* for S. A. L. Ry. Co., cites: *Federal statutes have not deprived carriers of common law defenses:* Roberts Int. Carriers, Secs. 328-9; 107 S. E., 252.   *Testimony not sufficiently definite on which to base a judgment:* 13 Cyc., 218; 28 S. C., 517.

*Messrs. Barnett & McDonald,* for Southern Ry. Co., cite: *Presumption of damage by terminal carrier:* 114 S. C., 141.   *Presumption of damage by carrier:* 4 R. C. L., 996; 111 S. E., 328.

*Messrs. Graydon & Graydon, for respondent*:    No citations.

September 1, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for loss and damage in the shipment of a carload of cattle from Vidalia, Ga., to the plaintiff at Columbia, S. C.; the claim being that the shipment arrived at destination six cows missing, one dead in the car, and three dying after unloading. The shipment was received at Vidalia by the defendant, Seaboard Air Line Railway Company, transported to Savannah, turned over there to Southern Railway Company, transported to Columbia, and there turned over by Southern to Atlantic Coast Line, to be delivered to plaintiff at his stockyard near fair grounds.

Before loading at Vidalia the cattle were dipped in a solution of arsenate, under the direction of a Federal agent, and allowed to stand for drying off for about an hour, and then loaded by the plaintiff on June 12, 1920. They were loaded to catch a freight train that left Vidalia at 10 a. m., but for some unexplained reason did not leave Vidalia until 12:30 a. m. on June 13th. They arrived at Savannah at 1 p. m. on the 13th; one cow was dead, and three were down in the car; unloaded, fed, watered, and reloaded at 6 p. m., offered to Southern Railway Company, which refused to receive them on account of death of one cow; held by Seaboard in car until 7 a. m. of 14th and unloaded again; two cows died in pen; reloaded and delivered to Southern at 6 p. m., of the 14th; arrived in Columbia 7:40 a. m. of 15th, unloaded, reloaded into another car, and delivered to Coast Line, to be switched to plaintiff's yard; two cows down in the car when shipment arrived. The plaintiff states that, when the car was delivered to him, six cows were missing, one dead in the car, and three died after unloading—a total shortage of ten cows. The defendants account for three dead in Savannah; the other

seven claimed by plaintiff to be short, not being accounted
for in any way.

The evidence of the plaintiff in reference to the weight
of the lost cows and their market value at the time and place
of destination was as follows: Enoch Smith, father of the
plaintiff and a witness for him, in response to a question
as to the weight of the lost cows, testified: "About 6,000
pounds, I believe; I have forgotten about that; I think they
were small cattle"; that he had filed a claim with the rail-
road company for 6,000 pounds at 10½ cents; that the dead
cows had not been weighed; that he was "just guessing."
In reference to the market value, the same witness testified
that they were worth 10½ cents per pound; that some of
the cows of this lot were sold at 10½ cents and some for less;
that the railroad company was charged for the dead cows at
the highest price; that he did not know what proportion
of the cattle delivered to him were sold at 10½ cents. The
plaintiff's testimony upon this point was that cattle from
that lot had been sold at 10½ cents. A witness for the
defendants testified that he had examined two of the dead
cows, and that they weighed about 500 to 550 pounds each.

At the close of all the testimony of the defendants each
made a motion for a directed verdict—the Seaboard upon
the ground that the evidence was too indefinite, both as to
weight of the cows lost and their market value, for the
jury to base other than a speculative verdict upon it, and
upon the further ground that the only inference which
could reasonably be drawn from the evidence was that the
cattle died from arsenic poisoning received in the dipping
process, without any negligence on the part of the defend-
ants; the Southern, upon the same grounds, and upon the
further ground that, the Southern being an intermediate
carrier, there did not arise the usual presumption against
the delivering carrier, and that, the cattle having been de-
livered to it in a damaged condition, the presumption was

that such condition continued and was the cause of their death.

Both motions were overruled, and, the case having been submitted to the jury, a verdict was rendered in favor of the plaintiff for $639.75, the full amount claimed against both defendants. Upon motion for a new trial the presiding Judge, by an order *nisi,* reduced the verdict against the Seaboard to $618.80, which he arrived at by estimating the weight at 525 pounds each and the value at 10½ cents and reduced the verdict against the Southern by deducting the value of four cows not delivered to it by the Seaboard and the extra feed bill, amounting to $253.07, allowing the verdict to stand against the Seaboard for $618.80, and against the Southern for $365.73, whether intended as joint to the extent of the latter amount or several for the separately stated amounts does not appear. The defendants have appealed and renew as their exceptions the above-stated grounds for directed verdicts.

The questions, therefore, arising for determination, are: (1) Was there sufficient evidence of the weight and market value of the lost cattle to require a submission of the case to the jury? (2) Could only the inference be drawn from the evidence that the loss of the cattle was due to the dipping process, unaccompanied by any negligence on the part of the carriers? (3) Was there sufficient evidence, direct or presumptive, charging the defendant, Southern Railway Company, with negligence, as to require a submission of the case as to that company to the jury?

As to the first question: It is impossible to extract from the evidence the elements required to form the basis of even an approximately intelligent verdict. If the carriers are liable for the loss of ten head of ordinary beef cattle, the verdict expressing the measure of that liability must naturally be based upon the evidence of the weight of the cattle and the market value either at the point of destination or, if the bill of lading so provides,

at the point of shipment. In this case the lot consisted of forty-one head of cattle. Whether they were of practically the same weight or not does not appear. Ten of them were lost in transit. Whether they were of the average weight or not does not appear. The gross weight of the lot is not given, by which such average weight might be ascertained. Only one witness for the plaintiff testified concerning the weight of the lost cattle, and he declared that he had forgotten all about the matter and was "just guessing" in estimating it at 6,000 pounds.

The evidence as to their market value is equally indefinite. Only two witnesses testified concerning it, the plaintiff and his father. The former stated that cattle from that lot sold at 10½ cents per pound; the latter, that some of the cattle sold for 10½ cents and some for less; that he charged the railroads at the highest price, and did not remember what per cent. of the carload sold at the highest price; that he had never seen the lost cattle, except the one dead on arrival and the three dying afterwards; no statement from either that they were of like quality as the others. All of this information was necessarily in the power of the plaintiff to furnish; the presumption is that, having it and not producing it, the information was to his detriment.

As to the second question: The evidence shows that the cattle were dipped by an experienced officer of the government, in the usual manner, with the prescribed formula; that they were not loaded for an hour thereafter; that ordinarily this is sufficient time for drying off. The evidence further shows that the car was loaded by direction of the agent to catch a freight train leaving out at 10 a. m.; that for some unexplained reason the cattle were left loaded in the car during the whole of a hot day, and were not taken out until after 12 o'clock that night. The issue was clearly one for the jury.

As to the third question:   While it is true that as to an intermediate carrier the usual presumption does not apply (*Southern Textile Co. v. P. N. R. R.,* 114 S. C., 141; 103 S. E., 475), and also that when goods are received by a carrier in an acknowledged damaged condition the presumption does not attach, the evidence in this case shows that when the car arrived in Columbia on the Southern line two of the cattle were down in the car.   As to these two, at least, the presumption of injury while in the custody of the Southern was sufficient to put that line to an explanation of the circumstances, and require the submission of the issue as to what extent it was responsible to the jury.

The judgment of this Court is that the judgment of the lower Court be reversed, and that the case be remanded to the Court for a new trial.

MR. JUSTICES FRASER and MARION concur.

MR. CHIEF JUSTICE GARY dissents.